Clarence E. WHALEY, Plaintiff,

v.

Edward CAVANAGH (Badge 1024), and any person who conspired to deprive plaintiff of rights, privileges, and immunities guaranteed by the Constitution, et al., Defendants.

Civ. A. No. 40650.

United States District Court
N. D. California, S. D.
Nov. 14, 1963.

Clarence E. Whaley in pro. per.

Thomas M. O'Connor, City Atty., San Francisco, Cal., George P. Agnost, Deputy City Atty., appearing, for defendants.

WOLLENBERG, District Judge.

Plaintiff, Clarence E. Whaley, brings this action under 42 U.S.C.A. § 1983 [1] claiming that defendant, Edward Cavanagh, subjected him to a deprivation of his constitutionally secured right of freedom of speech. The alleged deprivation occurred while plaintiff was standing on a public sidewalk in downtown San Francisco and exhibiting a placard which pointed out certain grievances to people passing by. Defendant, a San Francisco police officer on duty in the area and acting to enforce certain municipal ordinances relating to the obstruction of public sidewalks, dispersed a crowd which had gathered to observe plaintiff's placard and threatened plaintiff with arrest unless he kept moving while displaying the placard. Plaintiff maintains that the length of the material printed on the placard required him to stand in one place in order to effectively communicate his message to the public. He further maintains that defendant's order to keep moving or undergo arrest thereby deprived him of his constitutional right to express his ideas and opinions in a public forum, and caused him to suffer damages in the amount of eight thousand dollars.

Jurisdiction over an action brought under 42 U.S.C.A. § 1983 resides in this court by virtue of 28 U.S.C.A. § 1343,[2] and is not dependent upon the usual requisites of amount in controversy and diversity of citizenship.[3] Plaintiff's complaint states a prima facie claim under the foregoing sections. See York v. Story, 9th Cir., 324 F.2d 450, 1963.

The serious nature of plaintiff's claim is illustrated by the following statement from Justice Stone's concurring opinion in Hague v. C. I. O., 307 U.S. 496, 524, 59 S.Ct. 954, 968, 83 L.Ed. 1423 (1938):

"No more grave and important issue can be brought to this Court than that of freedom of speech and assembly, which the due process clause guarantees to all persons * * *."

It is also true, however, that this freedom is subject to reasonable regulations enacted by a municipality to protect the public interest. A year after the Hague decision the Supreme Court said:

"Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regu-

1. 42 U.S.C.A. § 1983 reads as follows:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 28 U.S.C.A. § 1343 reads, in part:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
* * * * *
"(3) To redress the deprivation, under color of any State law, statute, ordinance,

regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

3. See Cohen v. Norris, 300 F.2d 24, 26 at note 1 (9th Cir. 1962); Douglas v. City of Jeannette, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324 (1942); Ortega v. Ragen, 216 F.2d 561, 562 (7th Cir. 1954); Oppenheimer v. Stillwell, 132 F.Supp. 761, 763 (S.D.Cal.1955).

late the conduct of those using the streets." [4]

The task of this court, therefore, is to equitably balance plaintiff's right of freedom of speech against the duty of San Francisco municipal authorities to prevent interference with the public's use of community sidewalks. Regarding the specific situation which forms the basis of plaintiff's complaint, the court finds that the balance of equities involved weighs heavily in favor of the defendant.

The incident occurred at about 10:30 a. m. on September 14, 1961, while plaintiff was standing on a sidewalk in the 800 block of Market Street, in the heart of San Francisco's downtown business district. Plaintiff was displaying a placard which stated certain grievances against a San Francisco police officer, President Eisenhower, former Governor Earl Warren, and various other public officials. The placard was approximately 30 x 34 inches in size, and the recitation of grievances printed on it exceeded 200 words in length. Passers-by attracted by plaintiff's list of grievances would stop and stand on the sidewalk while they read some or all of the material printed on the placard. Plaintiff answered questions and otherwise orally elaborated on the list of grievances to the crowd which had gathered.

There is some dispute as to just how many persons were standing on the sidewalk at the time of the incident. Plaintiff testified that about 15 persons had gathered, while defendant thought that the number was probably closer to 25 or 30. In any event, the parties did agree that at least two-thirds of the sidewalk was obstructed, and pedestrians had not more than 5 or 6 feet through which they might pass between the back of the crowd and the building line. It is clear that pedestrian traffic was quite heavy (a fact generally true of this area of Market Street at all hours of the business day), and that the movement of pedestrians was seriously hampered by plaintiff's activities. Plaintiff himself testified that some persons were forced to make their way through a recessed store entrance directly to the rear of the crowd. Defendant added that a few persons avoided the crowd by stepping into the street.

It was under the foregoing circumstances that defendant, acting upon his own assessment of the situation after receiving notification from his precinct headquarters that two nearby stores had registered complaints about the disruptive effect of plaintiff's activities, began dispersing the crowd and specifically ordered plaintiff to keep moving while displaying his placard or be subject to arrest. After a short discussion plaintiff obeyed defendant's order and subsequently continued to display his placard while moving on the sidewalk. He was not arrested.

As authority for his actions, defendant relies upon Section 76 of the San Francisco Municipal Traffic Code, Section 157 of the San Francisco Municipal Police Code, and Section 370 of the Penal Code of California. These provisions read as follows:

"SEC. 76. *Pedestrians Standing on Sidewalk.* In any business district it shall be unlawful for any pedestrian to stand on the sidewalk, except as near as is practicable to the building line or the curb line."

"SEC. 157. *Crowds to Disperse on Order of Police Officer.* Whenever the free passage of any street or sidewalk shall be obstructed by a crowd, except on occasion of public meeting, the persons composing such crowd shall disperse or move on when directed so to do by any police officer."

"§ 370. *Public nuisance defined*
"Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable en-

4. Schneider v. State of New Jersey, 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939).

joyment of life or property by an entire community or neighborhood, or by any considerable number of persons, *or unlawfully obstructs the free passage or use, in the customary manner, of any* navigable lake, or river, bay, stream, canal, or basin, or any *public park, square, street, or highway, is a public nuisance."* (Emphasis added.)

Plaintiff has not challenged the constitutionality of the above provisions, and such is not our concern here. But it is also true that " * * * every conceivable class of legislation has inherent in it the possibility of unconstitutional acts of enforcement." [5]

Plaintiff alleged that defendant ordered him to move on or undergo arrest solely to prevent him from expressing views of which defendant personally disapproved. It appeared at trial, however, that defendant's actions related strictly to keeping the sidewalk free for passage by the public. It definitely was not defendant's purpose to in any way restrict plaintiff's constitutional right of freedom of speech.

Plaintiff also cited Schneider v. State, supra, which involved an unconstitutional application of certain municipal street littering ordinances and where the Supreme Court stated:

"We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press. This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets." [6]

Plaintiff argues by analogy that since he was carefully conforming to the Traffic Code Section 76 requirement of standing "as near as is practicable to * * the curb line", the persons who stopped to read the placard rather than himself, were in violation of Section 76 and causing the obstruction of free passage of the sidewalk objectionable under Police Code Section 157. Plaintiff's argument overlooks, however, the fact that he too was a member of the crowd which defendant was authorized to disperse and order to move on under Section 157. And, more importantly, plaintiff's activities are clearly distinguishable from those of the handbill distributors wrongfully convicted under the street littering ordinances in the Schneider case. The handbill distributors certainly did not intend that persons should casually litter the streets with their literature. Plaintiff, on the other hand, did want people to stop on the sidewalk and read the information printed on his placard. Furthermore, the handbill distributors could exert little or no influence on the subsequent actions of those receiving their literature, while plaintiff at least had it within his power to voluntarily move on if his actions were resulting in an obstruction of the sidewalk.

The court concludes, therefore, that although plaintiff was conforming to the requisites of Traffic Code Section 76, his actions resulted in the obstruction of a public sidewalk and were definitely subject to regulation under Police Code Section 157. The court does not find it necessary to determine whether plaintiff's conduct constituted a "public nuisance" as defined in Section 370 of the California Penal Code; nor does it hold that plaintiff may not under any circumstances stand on a public sidewalk and display his placard. It is quite possible that plaintiff could conduct his activities

---

5. In re Bodkin, 86 Cal.App.2d 208, 212, 194 P.2d 588, 591 (1948).

6. 308 U.S. at 162, 60 S.Ct. at 151.

**904**

without obstructing the free passage of a public sidewalk, and in that event his constitutional right to impart information to the public must not be abridged. The fact remains, however, that in the particular situation of which plaintiff complains herein, the defendant was entirely justified and acted reasonably in his enforcement of Municipal Police Code Section 157. It follows that plaintiff has failed to show a deprivation of his constitutional right of freedom of speech which entitles him to relief under 42 U.S.C.A. § 1983, and judgment shall be entered for defendant. Counsel for defendant shall prepare findings of fact, conclusions of law, and a judgment consistent with this opinion.