**Gertrude McCALL, Appellant,**

v.

**Bernard SHAPIRO, Commissioner, Connecticut Welfare Department, Appellee.**

**No. 586, Docket 33061.**

United States Court of Appeals Second Circuit.

Argued May 15, 1969.

Decided Aug. 11, 1969.

Mary R. Hennessey, Hartford, Conn. (Robert M. Cover, Center on Social Welfare Policy & Law, New York City, on the brief), for appellant.

Francis J. MacGregor, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., State of Connecticut, on the brief), for appellee.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut rendered October 17, 1968, 292 F.Supp. 268, M. Joseph Blumenfeld, Judge, dismissing plaintiff-appellant's action for declaratory and injunctive relief against the appellee Connecticut Welfare Department Commissioner. We find no error and affirm the judgment.

On May 24, 1968, the plaintiff-appellant was notified by the Social Security Administration that her daughter Georgianna was found eligible to receive Old Age, Survivors and Disability Insurance (OASDI) benefits under Title II of the Social Security Act. In June, 1968 appellant received a retroactive lump sum payment in the amount of $334.10 for the period September, 1967 through May, 1968. After appellant notified the Connecticut Welfare Commissioner of receipt of the payment, the Commissioner made demand for the total OASDI payment as reimbursement for assistance rendered Georgianna by Connecticut during the months covered by that payment. Appellant refused to turn over the OASDI payment, claiming that

it was a restricted payment for Georgianna's present and future needs under federal law, and as such exempt from the Commission's reimbursement requirement.

Upon appellant's failure to turn over the OASDI payment, appellant was notified by the Commissioner that the total Connecticut Aid for Families with Dependent Children (AFDC) for herself and her two daughters would be terminated for that period of time which it would take the three of them to exhaust the $334.10 OASDI payment, a period of six weeks, commencing on May 29, 1968.

On June 6, 1969 plaintiff requested a fair hearing before the Welfare Commissioner, which was held on June 20, 1968. At the hearing, appellant argued her right to the OASDI payment without reimbursement, and additionally that the termination of her AFDC assistance without first according her a hearing deprived her of due process of law. After appellant was back on welfare (AFDC) the Welfare Commission rendered its decision on July 23, 1968, rejecting appellant's arguments and upholding the action of the Commissioner.

Appellant then brought this action in the District of Connecticut, *in forma pauperis*, asking for a declaratory judgment and a permanent injunction enjoining the Commissioner from modifying, suspending or terminating public welfare assistance prior to a fair hearing, and requesting a three-judge district court under 28 U.S.C. §§ 2281, 2284. Appellant also claimed that in treating the OASDI payment as income which diminished the state's AFDC payments, the Commissioner interfered with the operation of the federal statute, 42 U.S.C. § 407. Appellant's remaining claim was without federal coloration.

With regard to appellant's request for a three-judge district court, the District Court held that under 28 U.S.C. §§ 2281, 2284 appellant's due process claim could not stand unless the federal question presented was substantial. 292 F.Supp. 270, citing Green v. Board of Elections, etc., 380 F.2d 445, 448 (2d Cir. 1967), cert. denied 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968). The District Court further held that although appellant's interest in receiving welfare assistance was protected by the due process clause, a hearing before suspension of payments was not required. The court noted that "at most what was at stake was who was entitled to possession of the OASDI check pending resolution of the question whether it was available for use as assistance for the family," and concluded that since an opportunity was given for a subsequent administrative hearing and judicial determination, the constitutional claim was insubstantial. Appellant does not challenge this holding on appeal.[1]

With regard to appellant's claim that there was a conflict between the federal and state welfare statutes and regulations, the District Court held that there was not present the requisite amount in controversy under 28 U.S.C. § 1331(a),[2] and further that the Court in the present case does not have subject matter jurisdiction under 28 U.S.C. § 1343(3)[3]

---

1. We have no occasion therefore to consider whether the due process claim may not be substantial where termination of relief without prior hearing effectively cuts off family support. Cf. Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y.1968). Here the sole question was the interpretation of the statute and regulations as to availability of categorical relief during a period after receipt of the Social Security payment. The Commissioner's ruling here may indeed be erroneous, but the question is whether the Congress has empowered the federal courts to determine the issue.

2. 28 U.S.C. § 1331(a) provides:
    The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

3. 28 U.S.C. § 1343(3) provides for original jurisdiction of the district court:
    To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by

which does not require a jurisdictional amount, since plaintiff-appellant has not been deprived of a right secured by the Constitution, nor does the deprivation claimed arise from an Act of Congress providing for equal rights of citizens.

Appellant argues here that federal jurisdiction is provided by 28 U.S.C. § 1343(4) which provides for original jurisdiction:

> To recover damages or to secure equitable or other relief under any Act of Congress providing for *the protection of civil rights,* including the right to vote. [Emphasis added.]

■ This contention was not ruled upon by the District Court. We think it not well taken. The Social Security Act is not one "providing for the protection of civil rights."

■ Appellant also argues that 42 U.S.C. § 1983,[4] which establishes a cause of action for any deprivation of a right secured by the Constitution and laws, establishes the cause of action here, *and provides for federal jurisdiction over such actions.* Although this might have been thought to be the case when the Act was originally enacted in 1871, the subsequent restructuring of federal court jurisdiction demonstrates that this was not the interpretation then made. The Act, 17 Stat. 13, was enacted to secure the Negroes' newly granted civil rights, and to give the federal courts cognizance of suits for the recovery of damages for violations of the Act of 1870. The 1875 Judiciary Act revolutionized the concept of the federal judicial system by establishing blanket federal question jurisdiction subject to a $500 amount requirement (subsequently increased in several steps to the present $10,000 limitation).

See H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 729 (1953). After the 1875 Judiciary Act, "the history of federal question jurisdiction * * * revolves largely around the creation by Congress of myriad new federal rights and its provision for their enforcement in the national courts without regard to jurisdictional amount." *Id.* at 730. As Hart and Wechsler point out, since the jurisdictional amount limitation imposed by the Act of 1875, the Congress has provided specific exceptions when it chose to make such jurisdiction available without regard to amount. The Congress has not, however, provided in the welfare statutes in question here for their enforcement in federal court without regard to jurisdictional amount. Section 1983 provides for jurisdiction without regard to amount in controversy only for suits alleging deprivation of *civil rights.*

The Civil Rights Act of 1871, the predecessor to Section 1983, provided for jurisdiction without regard to amount in controversy. Subsequently, the 1875 Judiciary Act provided for general federal question jurisdiction, with a $500 minimum requirement. The Act of 1871, however, was not superseded by the 1875 Judiciary Act, and a suit alleging a deprivation of civil rights could still be brought without alleging an amount in controversy. See opinion of Mr. Justice Stone in Hague v. Committee for Industrial Organization (1939) 307 U.S. 496, 529–532 at 531–532, 59 S.Ct. 954, 971, 83 L.Ed. 1423:

> The conclusion seems inescapable that the right conferred by the Act of 1871 to maintain a suit in equity in the federal courts to protect the suitor against a deprivation of rights or im-

the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

4. 42 U.S.C. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

munities secured by the Constitution, has been preserved, and that whenever the right or immunity is one of *personal liberty, not dependent for its existence upon the infringement of property rights* there is jurisdiction in the district court under § 24(14) of the Judicial Code to entertain it without proof that the amount in controversy exceeds $3,000. [Emphasis added.]

■ Thus, Section 1983 grants jurisdiction without regard to the amount in controversy when there is an unconstitutional infringement on individual rights (e. g., speech, liberty, vote, press, religion) incapable of monetary valuation. See Douglas v. City of Jeanette, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Whaley v. Cavanagh, 237 F. Supp. 900 (N.D.Calif.1963), aff'd 341 F.2d 295 (9th Cir. 1965), cert. denied 382 U.S. 872, 86 S.Ct. 102, 15 L.Ed.2d 110 (1965). It would appear that the limited exception to the amount in controversy requirement remaining in 42 U.S.C. § 1983 which consists of suits under the Civil Rights Act of 1871 does not extend to suits involving solely money claims not related to violation of civil rights.

Thus, for example, where a complaint falls under federal question jurisdiction but not civil rights jurisdiction, as in cases involving assessment of taxes, the jurisdictional amount requirement applies. See Bussie v. Long, 383 F.2d 766, 769 (5th Cir. 1967); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962), aff'd 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963).

This distinction has been held applicable to 28 U.S.C. § 1343. In Abernathy v. Carpenter, *supra*, plaintiffs claimed that an Illinois tax discriminated against them as nonresidents. The District Court held that there was no jurisdiction under § 1343 without regard to jurisdictional amount, since Hague v. Committee for Industrial Organization, *supra*, held that civil rights jurisdiction does not attach where the deprivation "is not one of

personal liberty, but merely a property right," 208 F.Supp. at 794, and the Supreme Court affirmed. See also Bussie v. Long, *supra*.

■ It is reasonably clear then that Section 1343(3) and (4) dealing with statutes providing for "equal rights" and "civil rights" were aimed at questions of personal liberty rather than property matters, and that the latter are relegated to the general provisions of 28 U.S.C. § 1331(a).

Appellant argues, however, that since the cause of action created by 42 U.S.C. § 1983 parallels the first clause of § 1343 (3), the scope of both should be the same in order to provide a comprehensive federal remedy. We do not agree. The language of the sections is not similar, Section 1983 does not contain the "providing for" limitation, nor is there any indication of a congressional intent to provide § 1343(3) jurisdiction for all suits under § 1983.

■ There appears here no claim of racial or other impermissible classification or discrimination or other classic civil rights issue, but rather a question of statutory interpretation by the Commissioner in a single case. This claim comes under none of the three types of congressional grant of power to the federal courts in cases arising under the laws of the United States, (1) the post-Civil War rights of action for deprivation of personal liberty exemplified by 1983, (2) the general federal question jurisdiction of the Judiciary Act of 1875 limited to claims in excess of $500 (since increased to in excess of $10,000), or (3) post-1875 acts creating rights of action and specifically exempting them from a monetary limitation. To assume jurisdiction here would be to accept a federal court review power over almost every ruling of the Commissioner in the day-to-day operation of the state welfare laws, regardless of the amount involved. We are reluctant to conclude that the Congress conferred such jurisdiction on us solely by implication, in the face of the

careful limitation of *Hague* and *Douglas, supra.*

Affirmed.

IRVING R. KAUFMAN, Circuit Judge (concurring):

Although the majority opinion, after carefully canvassing the history of federal jurisdictional statutes in search of an explicit exception to the $10,000 jurisdictional amount, found none, I concur dubitante. What was created here, was the familiar "whipsaw" pattern in which separate jurisdictions press diametrically opposed claims on one individual. Cf., e. g., Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (a state witness may not be compelled to give testimony that would subject him to federal prosecution). The existence of conflicting commands to an individual by differing sovereigns may raise severe constitutional due process objections.

Thus I find King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), particularly troublesome. The Court there invalidated a State "man in the house" rule on the basis of inconsistency with the federal statute under which the AFDC program was administered. The Court found jurisdiction under 28 U.S.C. § 1343(3) ("deprivation * * * of any right * * * secured by the Constitution * * * or by any Act of Congress providing for equal rights") and 28 U.S.C. § 1343(4) ("to secure * * * relief under any Act of Congress providing for the protection of civil rights, including the right to vote"). Although basing its exception to the jurisdictional amount on constitutional claims the Court decided the case on the sole ground of supremacy of the federal statute. I note therefore, that while it took jurisdiction on a constitutional ground, the Court's ultimate decision was based solely on statutory construction. If this be a basis for jurisdiction, without regard to amount in controversy, then appellant's due process "whipsaw" claim arguably suffices in this action. I would prefer, however, to await a clear declaration by the Supreme Court before holding in effect that any welfare recipient may obtain federal court review by urging what may be no more than a colorable constitutional claim, joined to a substantial statutory issue.