**Lorraine RUSSO, on behalf of herself and on behalf of her minor children; Ernestine Snow, on behalf of herself and on behalf of her minor children; Claretha Brown, on behalf of herself and on behalf of her minor child; and on behalf of all others similarly situated**

v.

**Bernard SHAPIRO, Commissioner of Welfare of the State of Connecticut.**

**Civ. No. 13409.**

United States District Court,
D. Connecticut.

Dec. 19, 1969.

William H. Clendenen, Jr., David M. Lesser, New Haven, Conn., for plaintiffs.

James M. Higgins, Asst. Atty. Gen., East Hartford, Conn., for defendant.

BLUMENFELD, District Judge.

Plaintiffs in this class action seek a declaration that certain actions taken by defendant Commissioner of Welfare in administering supplemental welfare benefits under Connecticut's comprehensive scheme of Aid to Families with Dependent Children (AFDC) are unconstitutional (under the Equal Protection and Due Process Clauses of the fourteenth amendment) and are in contravention of the Social Security Act. They also seek an injunction against such conduct in the future. They have moved for summary judgment, as has the defendant. Plaintiffs' motion is denied, and the defendant's granted.

### Facts

Prior to the fall of 1969, the Connecticut Welfare Department did not provide a back-to-school clothing allowance. The clothing needs of welfare recipients were the concern of other provisions of the state welfare regulations. An amount for replacement clothing is included in the regular monthly benefits and each person upon becoming eligible for welfare benefits is entitled to be brought up to welfare department standards of minimum clothing quantities. Conn. State Welfare Manual, Vol. 1, Chap. III, § 351.2. Also, special clothing allowances are available in the event that a "catas-

trophe" makes them necessary. Dep't. Bulletin No. 2226 (January 22, 1969).

On August 28, 1969, a group of welfare recipients marched to the State Capitol demanding additional welfare allowances for back-to-school clothing, and a conference on the subject was subsequently held among state welfare officials, the Governor, and some welfare recipients. Affidavit of Commissioner Shapiro at 1. From August 29 until September 3, back-to-school clothing allowances were awarded to several persons on the basis of need without a ceiling on the amount allowable for each individual. *Id.* at 2.

On September 3, Commissioner Shapiro, having returned to the state from a vacation the day before, issued a directive to the Welfare Department's District Directors to govern the back-to-school allowances. The directive is set out in the margin.[1] One of its provisions is that "in no instance will the back-to-school allowance for each child assisted be in excess of one payment of $30.00 per child who is otherwise eligible." Allowances made prior to the directive had not been so limited and some children in fact received more than $30. Plaintiffs Exhs. B–F.

Plaintiffs are welfare mothers and their school-age children who applied for back-to-school clothing allowances after the effective date of the directive and were found to be eligible for them. Their back-to-school clothing needs were assessed by the Department, and each child was found to need in excess of $30. Plaintiff Exhs. A and AA. Pursuant to the directive, however, each was limited to $30.

Plaintiffs claim that the directive on its face denies them the equal protection of the laws. They argue that the maximum allowance limitation of $30 treats the following groups arbitrarily more favorably than they are treated: (1) those who received their back-to-school clothing allowances before the date of the directive and were therefore able to have 100% of their need satisfied, even if in excess of $30; (2) those with needs of $30 or less who could therefore obtain 100% of their needs within the terms of the guideline; (3) those with needs in excess of $30 but less than plaintiffs' needs, who received $30 under the guideline (thereby being relieved of a

---

1. The directive in its entirety reads:

"At a recent meeting of a group of welfare recipients, officials of the State Welfare Department and Governor Dempsey, the Governor expressed concern that some instances of hardship may exist in the matter of back-to-school clothing for children of welfare clients.

"In accordance with the Governor's wishes that cases where such hardship may exist be given individual review, all such requests will be handled under the following guidelines established by me as Commisioner of Welfare. If individual questions arise which require further clarification as to whether extraordinary hardship exists, they should be discussed with supervisory authority.

"1. All emergency needs of children for school clothing are to be received and reviewed on an individual basis.

"2. Monthly clothing allowances are to be fully utilized.

"3. Families whose needs have been brought up to welfare quantity standards within the past three months by

lump sum payment are to receive no back-to-school clothing allowances.

"4. Children who have been employed during the summer and whose incomes have been disregarded are not to receive additional clothing.

"5. Families who are benefiting from incentive earnings from employment are not to receive back-to-school clothing.

"6. In no instance will the back-to-school allowance for each child assisted be in excess of one payment of $30.00 per child who is otherwise eligible.

"7. Families who have not been brought up to standards will receive this consideration if they request provision of the minimum clothing standards."

Apparently ¶¶ 2–5 are conditions precedent to the receipt of any back-to-school clothing allowance. It would have been helpful if the directive had a clearer set of reasons for the administrative decision attached to it.

greater *per cent* of their needs than plaintiffs).[2] Secondly, plaintiffs argue that the guideline deprives them of the due process of law because it establishes a conclusive presumption that their actual needs will not exceed $30 per child. Finally, they contend that the guideline contravenes the Social Security Act.

This last contentio nis disposed of in the margin.[3]

### Jurisdiction

Plaintiffs contend that this suit is authorized by 42 U.S.C. § 1983 [4] and that jurisdiction is vested under 28 U.S.C. § 1343(3),[5] for which there is no juris-

2. Plaintiffs raise an additional equal protection claim which must be disposed of at the outset for lack of standing. They argue that the Commissioner has authorized, by the directive, back-to-school allowances in excess of $30 for cases of "extraordinary hardship." While this authorization does not appear from the face of the directive, *supra*, n. 1 (in fact, ¶ 6 seems to indicate just the contrary), the Commissioner apparently interpreted it to authorize such excess grants. Affidavit of Commissioner Shapiro at 2. Plaintiffs urge that "extraordinary hardship," not defined in the directive, is too vague to serve as a standard, and could not in any case serve to distinguish between welfare recipients as to how badly they need additional clothing in excess of $30 in order to go back to school. Plaintiffs cite only one case, that of Claretha Brown, in which an amount in excess of $30 was granted on the basis of hardship. See Notice of Action, W–52T, attached to plaintiff Claretha Brown's Motion for Permission to Withdraw.

It does not appear that any of the plaintiffs have sought or been denied excess payments on the basis of extraordinary hardship. Since they have not been arbitrarily denied an excess allowance under this alleged exception in the defendant's guideline, there is not the required "logical nexus between the status asserted and the claim sought to be adjudicated." Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed. 2d 947 (1968).

3. Plaintiffs argue that the denial to them of clothing allowances measured by their actual need or by some fixed percentage of that need violates an "implicit" "Condition X" of the Social Security Act. "Condition X", *see* Note, Welfare's "Condition X," 76 Yale L.J. 1222 (1967), is said to be an HEW requirement of rationality, satisfied "only if the classification effecting such limitation [of welfare benefits] is a rational one in light of the purposes of public assistance pro-

grams." A. Willcox, Memorandum Concerning Authority of the Secretary, Under Title IV of the Social Security Act, to Disapprove Michigan House Bill 145 on the Ground of its Limitations of Eligibility, March 25, 1963, at 1. It does not expressly appear in the federal statute, but is said to be "implicit in numerous provisions." Plaintiffs Brief at 30. "Condition X" is to be applied by HEW to disapprove state plans, which are not rational but which nonetheless meet the express requirements of the act. Note, *supra* at 1222.

In this case, it is not necessary to decide whether "Condition X" exists, what its contours are, whether to violate it is also to violate the Social Security Act, or, if so, whether this court would then have pendent jurisdiction over the alleged violation. *See* King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Rosado v. Wyman, 414 F. 2d 170 (2d Cir. 1969). It is sufficient to say that the rationality of the Commissioner's ruling will be adequately tested by the plaintiffs' equal protection claim. I see no basis for a separate consideration of a statutory claim based on the elusive "Condition X."

4. 42 U.S.C. § 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. 28 U.S.C. § 1343(3) provides for original jurisdiction in the district court of any action:
"To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States

dictional amount requirement. As noted by two recent cases from this circuit, the scope of these two sections is not the same. Eisen v. Eastman, 421 F.2d 560, at 562 (2d Cir. Nov. 28, 1969); McCall v. Shapiro, 416 F.2d 246, 249–250 (2d Cir. 1969). However, it is clear from the history and from the cases that § 1343(3) is the "jurisdictional implementation" or "jurisdictional counterpart" of the Civil Rights Act of 1871, now 42 U.S. C. § 1983, and that "in cases alleging *constitutional* deprivations [as distinguished from deprivations of rights secured by statutes providing for equal rights of citizens, *see* McCall v. Shapiro, *supra*] both sections are subject to the same interpretation." Eisen v. Eastman, *supra*, 421 F.2d at 565 n.8, (emphasis added). Therefore, the same analysis which will serve to determine whether this court has jurisdiction over plaintiffs' claims will be useful in considering whether plaintiffs state a claim upon which relief can be granted. *Cf.* Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383 (1946); Olson v. Board of Educ., 250 F.Supp. 1000, 1004 (E.D.N.Y.), *appeal dismissed*, 367 F.2d 565 (2d Cir. 1966).

■ Despite the increasing frequency with which these statutes are invoked, Eisen v. Eastman, *supra*, 421 F.2d at 561 n.1, their scope is still unclear. *Id.* at 565 and 566. Nevertheless, some things are now settled. First, the statutes were not intended to be nor have they been extended to the limits that their language will allow. Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Carter v. Greenhow, 114 U.S. 317, 323, 5 S.Ct. 928, 29 L.Ed. 202 (1885); Eisen v. Eastman, *supra*, 421 F.2d at 565. Second, while § 1983 and § 1343(3) apply only to deprivations of "civil rights," Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed. 2d 288 (1967); Holt v. Indiana Mfg. Co., 176 U.S. 68, 72, 20 S.Ct. 272, 44 L.Ed. 374 (1900); Eisen v. Eastman, *supra*,

421 F.2d at 565; McCall v. Shapiro, 416 F.2d at 249, it is now clear that their scope is not restricted to the privileges and immunities section of the Fourteenth Amendment. Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Powell v. Workmen's Comp. Bd., 327 F.2d 131, 136 (2d Cir. 1964); Moss v. Hornig, 314 F.2d 89, 92 (2d Cir. 1963).

■ Finally, and of most concern in cases like the present, §§ 1983 and 1343 (3) apply only when "the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. C.I.O., 307 U.S. at 531, 59 S.Ct. at 971 (opinion of Mr. Justice Stone) (adopted somewhat hesitantly as the rule for this circuit in Eisen v. Eastman, *supra*, 421 F.2d at 566, and less hesitantly in McCall v. Shapiro, 416 F.2d at 250). *See also* Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968).

Considerable difficulty is encountered when applying these principles to constitutional challenges to state welfare regulations and their administration by state officials. Eisen v. Eastman, *supra*, 421 F.2d at 566 n.10. The plaintiff must show that the constitutional right (or appropriate statutory right) of which he is being deprived is also a civil right involving personal liberty and "not dependent for its existence upon the infringement of property rights." The present case presents a good example of the difficulties involved.

Plaintiffs allege a denial of equal protection because they are limited to the same amount of aid as others with less need and, therefore, are deprived of the right to receive the back-to-school clothing allowances on the same terms as others. While I might otherwise be inclined to find that these allegations are insufficient to state a claim under § 1983 or secure jurisdiction under § 1343 (3) according to the standards set out above, I have difficulty distinguishing

or by any Act of Congress providing for equal rights of citizens or of all

persons within the jurisdiction of the United States."

them from those in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), where the Court sustained, without discussion,[6] § 1343(3) jurisdiction over a similar alleged denial of equal protection by operation of state welfare legislation. Compare the similar difficulty noted by Judge Friendly in Eisen v. Eastman, *supra,* 421 F.2d at 564, and by Judge Kaufman, concurring in McCall v. Shapiro, 416 F.2d at 251. Judge Friendly suggested in Eisen, 421 F.2d at 564 that the regulation in *King* may have not only caused economic loss to AFDC children, "but also infringed their 'liberty' to grow up with financial aid for their subsistence * * *." If so, is there not also a similar "liberty" in this case to have clothing to wear to school?[7]

▉ To refuse jurisdiction in this case would require that a jurisdictional basis found adequate in the only similar case decided by the Supreme Court, King v. Smith, *supra,* be rejected. See also Westberry v. Fisher, 297 F.Supp. 1109 (S.D. Me.1969); Dews v. Henry, 297 F.Supp. 587 (D.Ariz.1969); Williams v. Dandridge, 297 F.Supp. 450 (D.Md.1968). Cf. Shapiro v. Thompson, *supra.* I hold that there is an adequate basis for jurisdiction under 28 U.S.C. § 1343(3).

*Exhaustion of Administrative Remedies*

▉ Pursuing a different ground for its motion for summary judgment defendant urges that plaintiffs have failed to exhaust administrative remedies, although he does not suggest that any relief could have been obtained through pursuit of such remedies. Plaintiffs do not claim that the directive has been incorrectly applied to them, but rather that by its terms it arbitrarily discriminates against those in their position. To require that they challenge the constitutionality of the directive before the Commissioner who issued it [8] "would be to demand a futile act." Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968); *see* Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967); Eisen v. Eastman, *supra,* 421 F.2d at 569. The failure to exhaust administrative remedies is no bar to the exercise of jurisdiction in this case.

*Equal Protection*

▉ Plaintiffs first claim arbitrary discrimination as compared to those who received in excess of $30 for back-to-school clothing in the period between August 29 and September 3, before the directive was issued. This claim has no merit. The evidence showed that these grants were made in the absence of any clear administrative policy, while the defendant was out of the state on vacation. The recipients were told to expend the funds and did so. The Equal Protection Clause does not prevent a statute or regulation from having a beginning and thus discriminate between rights of an earlier and a later time. *Cf.* Grime v. Department of Public Instruction, 324 Pa. 371, 188 A. 337 (1936). Nor does it require that a level of benefits, once established, exist for all time. Surely it is within the power of the state to change the level of benefits according to the

---

6. Still less illumination is furnished by Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), where none of the three 3-Judge District Courts below, Harrell v. Tobriner, 279 F.Supp. 22 (D.D.C.1967); Smith v. Reynolds, 277 F.Supp. 65 (E.D.Pa.1967); Thompson v. Shapiro, 270 F.Supp. 331 (D. Conn.1967), nor the Supreme Court even mentioned the jurisdictional basis for actions by plaintiffs who claimed that the refusal to award them AFDC benefits because of a one-year residence requirement was a denial of equal protection.

7. Section 19 of P.A. 730 (1969) provides in part that: "The commissioner shall grant aid * * * in such amount, determined in accordance with standards established by the commissioner, as is needed in order to * * * support * * * dependent * * * children * * * in health and decency * * *."

8. Pursuant to authority to issue such a regulation in P.A. 730, § 9, amending Conn.Gen.Stats. § 17–2.

available resources. *Cf.* King v. Smith, 392 U.S. at 318–319, 88 S.Ct. 2128, 20 L. Ed.2d 1118. Even if that change results in smaller benefits being awarded thereafter, plaintiffs have not been denied equal protection so long as they are being treated the same as those similarly situated *at the same time*.

Of more substance is plaintiffs' principal equal protection argument that the $30 maximum on back-to-school clothing creates an arbitrary and invidious discrimination between them (and those with greater needs) on the one hand, and those with lesser need (whether it be more or less than $30) on the other. Plaintiffs' point is that the $30 represents varying percentages of the actual needs of those subject to its limitation. Those with back-to-school needs of $30 or less will have 100% of those needs filled. As the need increases beyond $30, however, the percentage of that need that $30 can satisfy decreases. Because of this effect, plaintiffs claim that including them within the same maximum limitation with those of lesser need operates to create separate classes according to the percentage of need met by the maximum. This equal treatment of unequals, they claim, is an arbitrary and invidious classification.

■■ Plaintiffs are creating a classification where none exists in order to state their claim to fit the locutions of the Equal Protection Clause. Under the directive, each individual is treated equally with respect to back-to-school clothing. Each is entitled to up to $30 and no more (with the possible exception of those suffering from extraordinary hardship). The Equal Protection Clause was not designed to eliminate inequalities existing independently of state action, but rather to preclude creation of inequalities by the state. The $30 maximum limitation at issue here does not create any inequalities, not already existing, which are cognizable or remediable by the Equal Protection Clause.

■ While the $30 maximum does serve to create some kind of a distinction between plaintiffs and those with lesser needs on the basis of percent of needs met, it does not operate to create a separate classification requiring different treatment in order to avoid the proscription of the Equal Protection Clause.

The traditional equal protection test is whether the classifications at issue are "without any reasonable basis." Shapiro v. Thompson, 394 U.S. at 638, n.20, 89 S.Ct. 1322. Recently, the Court said: "Though the test has been variously stated, the end result is whether the line drawn is a rational one." Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436 (1968). Even more recently, in McDonald v. Board of Election Comm'rs., 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969), the Court said: "The distinctions * * * must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal."

The plaintiffs urge that the traditional test is inapplicable here and that the constitutionality of the classification depends not on whether it *rationally relates* to a *legitimate* state interest, but whether it *promotes* a *compelling* state interest. This stricter scrutiny is called for, they argue, because the classification "touches on [a] fundamental right." Shapiro v. Thompson, 394 U.S. at 638, 89 S.Ct. 1322. *See* Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed. 2d 965 (1963).

■ The freedom of the plaintiffs to exercise constitutional rights has not been restricted in any way. *Cf.* Sherbert v. Verner, *supra*. Nor does the classification at issue touch upon *fundamental* rights. While the opportunity to obtain an education may be regarded as a fundamental right, *cf.* Brown v. Board of Educ., 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873, 38 A.L.R.2d 1180 (1954), no claim has been made that the back-to-school allowances made were so inadequate as to prevent the plaintiffs from attending school. There may be some

signs of an emerging judicial trend to require "strict scrutiny" of classifications which deny "welfare aid upon which may depend the ability of the families to obtain the very means to subsist—food, shelter, and other necessities of life." Shapiro v. Thompson, 394 U.S. at 627, 89 S.Ct. at 1327; Rothstein v. Wyman, 303 F.Supp. 339, 346–347 (S.D.N.Y. 1969), appeal docketed, 397 U.S. 903, 90 S.Ct. 910, 25 L.Ed.2d 85 (U.S. Nov. 28, 1969) (No. 896); cf. McCall v. Shapiro, 416 F.2d at 248 n.1; Developments in the Law—Equal Protection, 82 Harv.L. Rev. 1065, 1170–80 (1969). But that trend gains no impetus from this case, for although it is concerned with welfare aid, "the very means to subsist" are not at stake. Instead of denying or diminishing the means to subsist, the directive authorizes an increase in them. Other types of benefit payments noted above are designed to provide adequate clothing for all welfare beneficiaries, including school-age children. The regular equal protection test is appropriate for judging the constitutionality of the challenged directive.

Allowances for back-to-school clothing were considered at a traditionally appropriate time of year for replenishing children's wardrobes. The purpose was to provide for clothing needs at that time for those children who for one reason or another did not *then* have suitable clothing to start back to school. In line with this objective, the $30 limitation was set to make sure that such funds as were available for this supplemental aid would not turn out to be insufficient to provide back-to-school clothing to all eligible children on an equal basis. This was not an impermissible purpose. *Cf.* Shapiro v. Thompson, *supra.*[9]

Plaintiffs rely on several recent cases holding that maximum grant limitations as applied to AFDC *families* are invalid as a denial of equal protection. *E.g.,* Lindsey v. Smith, 303 F.Supp. 1203 (W.D. Wash.1969); Westberry v. Fisher, *supra;* Dews v. Henry, *supra;* Williams v. Dandridge, *supra.* *Cf.* Metcalf v. Swank, 293 F.Supp. 268 (N.D.Ill.1968). This reliance is misplaced. The classifications in such cases have been readily exposed as resulting in discrimination against those in large families as compared to those in small families—and to subject those in larger families to less favorable treatment than those in smaller families. Thus, contrary to this case, each child in the larger families was not treated numerically equally to each child in the smaller families.

■■■ Perhaps it would be a better solution for the problems of the poor to provide more for some than others instead of equal provision for all. The argument that it is fairer to do so has been seriously discussed in a provocative article. Michelman, Foreward: On Protecting the Poor Through the Fourteenth Amendment, The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7 (1969). Whether such dissimilar treatment could withstand an assault based upon an alleged denial of equal protection under the fourteenth amendment need not be answered here. *Cf.* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065 (1969). Assuming that needs could be rationally ascertained on an individual basis, it is for the legislature, not the courts, to direct the way into such an administrative thicket. While equal protection does not demand equal benefits, it is clear that identity of treatment does not signify that equal protection is wanting.

9. "We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly, in the cases before us, appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification." 394 U.S. at 633, 89 S.Ct. at 1330 (footnote omitted).

In the instant case, each individual, absent extraordinary hardship, is being treated equally under the guideline. No child is discriminated against because of the number of brothers and sisters he has. The state is entitled to restrict the level of benefits in order to conserve its funds—it may even refuse to allow any benefits at all. King v. Smith, supra; [10] Rosado v. Wyman, *supra*. "A statute is not invalid under the Constitution because it might have gone farther than it did * * *." Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929). The directive has not operated to deny equal protection of the law to the plaintiffs.

### Due Process

Plaintiffs also claim that the September 3 guideline denies them due process of law because it establishes a conclusive presumption that their actual clothing needs will not be more than $30 apiece. Couching the $30 limitation in terms of a conclusive presumption to present a due process issue is nothing but a transparent attempt to avoid the rule that a state may adopt any limit it chooses for the welfare benefits it will pay.

This is properly a class action. See Solman v. Shapiro, 300 F.Supp. 409, 411 n.1 (D.Conn.1969), aff'd, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). Motions of others to intervene are considered in a supplemental opinion filed contemporaneously herewith.

There is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. Enter judgment for the defendant.

So ordered.

### RULING ON MOTIONS TO INTERVENE

Two motions to intervene were filed in this case; decision on them was reserved until arguments could be heard on the cross-motions for summary judgment in the main action. In the light of the decision rendered on the motions for summary judgment, these motions to intervene are denied.

Barbara Middagh, one of the movants, is the mother of four school-age children, two of whom were denied back-to-school allowances in excess of $30, and two of whom were denied any back-to-school allowances. The claims with respect to the two whose allowances were limited to $30 present the identical issues as are adjudicated in the main action. Their interests were adequately asserted and protected by the plaintiffs in the main action, which is a class action.

The other two Middagh children present an entirely different situation involving quite different legal issues. Their allowances were denied under ¶ 4 of the Commissioner's September 3 directive (*supra* n.1) which states: "Children who have been employed during the summer and whose incomes have been disregarded are not to receive additional clothing." The $30 maximum limitation, which was the primary subject of the main action, is not involved at all. Mrs. Middagh contends that the denial of a clothing allowance to these two under the quoted guideline denies them equal protection and due process and contravenes the Social Security Act, 42 U.S.C. § 602(a) (8).

Annie Roberson, the other movant, is the mother of three school-age children, all of whom were denied any back-to-school allowances because of their mother's "incentive earnings" from employment. Paragraph 5 of the September directive provides: "Families who are benefiting from incentive earnings from employment are not to receive back-to-school clothing." Again, the $30 limitation has nothing to do with the denial of

---

10. "There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." 392 U.S. at 318–319, 88 S.Ct. at 2134 (footnotes omitted).

the allowance. Mrs. Roberson claims that she and her children have been denied equal protection and due process and that the directive contravenes the Social Security Act, 42 U.S.C. § 602(a)(8) and also P.A. 730 § 9 (1969).

 Consideration of these different issues raised by the motions to intervene would require going far afield from those considered in the main action, and involve very different questions of law. Both motions are denied for want of a question of law or fact in common with the main action. Fed.R.Civ.P. 24.

So ordered.