Evelyn McCLELLAN et al.

v.

Bernard SHAPIRO, Commissioner of Welfare, State of Connecticut.

Bertha DUNDY et al.

v.

Bernard SHAPIRO, Commissioner of Welfare, State of Connecticut.

Lula Mae STANLEY et al.

v.

Bernard SHAPIRO, Commissioner of Welfare, State of Connecticut.

Civ. No. 13267.

United States District Court,
D. Connecticut.

April 16, 1970.

William H. Clendenen, Jr., and David M. Lesser, New Haven, Conn., for plaintiffs.

James M. Higgins, Asst. Atty. Gen., State of Connecticut, East Hartford, Conn., for defendant.

Before HAYS, Circuit Judge and BLUMENFELD and ZAMPANO, District Judges.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Plaintiffs in this class action[1] are nineteen year old AFDC recipients whose welfare benefits were discontinued by Section 5 of Public Act 730, a 1969 amendment to Connecticut's state welfare statutes.[2] Section 5 defines a dependent child, for purposes of AFDC eligibility,[3] as follows:

> " 'dependent child' means a needy child under the age of nineteen, or who attains the age of nineteen while in full-time attendance in a secondary school during a school year, who has been deprived of parental support or care * * *."[4]

They attack the statute on two grounds: first, that it denies them the equal protection of the laws as guaranteed by the fourteenth amendment of the Constitution; and second, that it contravenes the federal Social Security Act. Since they have prayed for affirmative injunctive relief on a statewide basis, a three-judge district court was convened. 28 U.S.C. § 2281.

1. This is properly a class action under Fed. R.Civ.P. 23(a) and (b) (2) since the prerequisites of subsection (a) are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *." *Cf.* Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968).

 Plaintiffs do not, however, represent all those excluded by operation of the statute. For the subclasses actually represented by plaintiffs, *see infra* p. 488 n. 12.

2. *See generally* Conn.Gen.Stats. §§ 17–84 to 17–107. Connecticut participates in the federal Aid to Families with Dependent Children (AFDC) program under which it receives federal funds for federally approved "plans for aid and services to needy families with children." *See* 42 U.S.C. §§ 601 and 602.

3. *See* Public Act 730 § 6 (1969) repealing and replacing Conn.Gen.Stats. § 17–85.

4. Prior to the 1969 amendment, a dependent child in Connecticut was an otherwise eligible needy child under the age of eighteen or "under the age of twenty-one and in full time attendance in secondary school or technical school or in college." Conn.Gen.Stats. § 17–82 (1967). Prior to 1967, no one over the age of eighteen was eligible for aid as a dependent child.

*Jurisdiction*

Plaintiffs' first contention is that by denying welfare assistance to them when they reached the age of nineteen because they were not then in fulltime attendance at a secondary school, while granting such aid to those who were, the statute subjects them to a discrimination so invidious as to deprive them of their right to equal protection of the laws. Plaintiffs rely upon 42 U.S.C. § 1983 [5] for a cause of action and upon its implementing counterpart 28 U.S.C. § 1343 (3) [6] for jurisdiction.

 These two statutes and their interrelationship have received recent and careful analysis in this circuit. *See* Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969). Where, as here, deprivations of *constitutional* rights are alleged, both sections require the same interpretation. *Eisen, supra,* at nn. 5 & 8.[7] Accordingly, if a complaint alleging such a deprivation meets the substantive requirements of § 1983, the federal court will have jurisdiction under § 1343(3). However, "[w]hether the complaint states a cause of action on which relief could be granted * * * must be decided after and not before the court has assumed jurisdiction over the controversy." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *cf.* Olson v. Board of Educ., 250

F.Supp. 1000, 1004 (E.D.N.Y.), appeal dismissed, 367 F.2d 565 (2d Cir. 1966).[8]

 To meet the jurisdictional requirements of § 1343(3) (or the substantive requirements of § 1983) plaintiffs must allege the deprivation not of just any right, but of a "right or immunity [which] * * * is one of personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. CIO, 307 U.S. 496, 518, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (opinion of Mr. Justice Stone). *See Eisen, supra,* 421 F.2d at 566 (adopting Mr. Justice Stone's formulation "generously construed" as the law of this circuit); *McCall, supra,* 416 F.2d at 250. See also, Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968). Since "right" is a multifaceted concept which takes on different meanings for different purposes, the particular concept defined by Mr. Justice Stone is not always easy to apply. *Eisen, supra,* 421 F.2d at 565 and 566. Real difficulty arises in trying to fit it to claims arising under state welfare statutes such as this one. *Id.* at 566 n. 10. The least that can be said is that it is not settled that every claim to welfare benefits must be regarded as a right involving personal liberty in the general sense of an inalienable right which belongs to every one. *See McCall, supra,* 416 F.2d at 251 (concurring opinion of Judge Kauf-

5. 42 U.S.C. § 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6. 28 U.S.C. § 1343(3) provides federal court jurisdiction for a civil action by any person:
"To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by

the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

7. This is not true "in a case of claimed conflict with a federal *statute,* [where] the narrower words of the jurisdictional provision * * * prevail over the broader language of 42 U.S.C. § 1983." *Eisen, supra* at 565 (emphasis in original); *see McCall, supra* at 250.

8. "If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." Bell v. Hood, *supra,* 327 U.S. at 682, 66 S.Ct. at 776.

man). *Cf.* Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970) (dissenting opinion of Judge Hays). A more careful analysis of the plaintiffs' claims are thus in order.

■ Were it not for King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), we would be inclined to dismiss this suit for want of jurisdiction. In that case, jurisdiction under 28 U.S.C. § 1343(3) was accepted over a claim which, indiscriminately considered, might be said to be indistinguishable from this one. Judge Friendly has suggested that Alabama's application of its man-in-the-house rule challenged in *King* may have been regarded by the Supreme Court as having "infringed [the plaintiffs'] 'liberty' to grow up with financial aid for their subsistence * * *," *Eisen, supra,* 421 F.2d at 564, and thus supported jurisdiction under § 1343(3). It is not impossible that it is over-stretching that concept of "personal liberty", even "generously construed" to embrace a right of a nineteen year old to obtain welfare allowances from the state for food, clothing, shelter, medical attention and child care.[9] We would be loath to extend the concept of "liberty" that far to support federal jurisdiction in this case were it not that the very statute in issue, by its own terms, defines a nineteen year old who is also a student as a "dependent child"[10] under some circumstances to whom AFDC benefits will be afforded.[11]

For the foregoing reasons we feel constrained to accept jurisdiction on the basis of the plaintiffs' constitutional claim. *See also* Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), where, as in King v. Smith, the Court found, without discussion, federal jurisdiction under § 1343 over a claim for welfare benefits. Since the constitutional claim is neither insubstantial, *cf.* McCall v. Shapiro, 292 F.Supp. 268, 276 (D.C.Conn.1968), aff'd, 416 F.2d 246 (2d Cir. 1969), nor moot, *cf.* Rosado v. Wyman, *supra,* there is also jurisdiction over their other federal claim that Connecticut's statute is invalid because it is inconsistent with the Social Security Act. King v. Smith, *supra,* 392 U.S. at 312 n. 3, 88 S.Ct. 2128.

### The Plaintiffs

The milieu in which Section 5 has an impact is fairly reflected by the circumstances of the several plaintiffs who have joined in this suit.

Plaintiffs represent four subclasses of nineteen year olds who are excluded by application of Section 5: (1) those who have been graduated from secondary school and are now attending college (Douglas Losty, Madeline Dundy, Jordan Langley, LeRoy Shields); (2) those who have been graduated from secondary school and are now attending a post-graduate vocational training course (Marabelle Stanley); (3) those who have attained the age of nineteen while in full-time attendance in a secondary school, but before the start of a school year (Leonard Bartel); and (4) those not now in school but who have been graduated from secondary school and would, if their AFDC benefits were restored, attend post-graduate courses, either vocational (Gail Sadler), or collegiate (Arthur Jones).[12]

9. Compare these plaintiffs with the younger and more helpless plaintiff children in *King, supra. Cf. McCall, supra,* 416 F.2d at 248 n. 1; Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

10. *See also,* Senate Finance Comm., S.Rep. No. 1517, 1964 U.S.Code Cong. & Adm. News (2), p. 3925: "The assumption that children are no longer dependent upon attaining age 18 is not valid as applied to children still attending school."

11. Section 19 of P.A. 730 (1969) provides in part: "The commissioner shall grant aid * * * in such amount, determined in accordance with standards established by the commissioner, as is needed in order to * * * support * * * dependent * * * children * * * in health and decency * * *."

12. Plaintiffs thus do not represent all persons excluded from AFDC benefits by operation of Section 5. For example, the interests of twenty year olds, who are

Plaintiffs claim that there is no rational basis for distinguishing all or any of them from those who are eligible under Section 5: i. e. (1) those under the age of nineteen; and (2) those who turn nineteen while in full-time attendance in a secondary school during a school year. The effect of granting them the relief they seek would of course be to reinstate them on the welfare rolls.

### The Statutory Claim

■ Before reaching the plaintiffs' constitutional claim we are obliged first to consider and dispose of the case on the statutory ground, if possible. King v. Smith, *supra* at 313, 88 S.Ct. 2128. *Cf.* Harmon v. Brucker, 355 U.S. 579, 581, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); United States v. Minor, 398 F.2d 511, 514 (1968), aff'd, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969).

Plaintiffs' statutory argument is that Section 5 contravenes the Social Security Act, 42 U.S.C. § 606(a). *Cf.* King v. Smith, *supra*. Individuals eligible for AFDC aid are broadly defined by § 601 of the Act as "needy dependent children and the parents or relatives with whom they are living." At issue here is the proper interpretation of § 606(a) which defines a dependent child as:

> "a needy child (1) who has been deprived of parental support * * *, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment."

Obviously, if part (2) (B) of the quoted section is not regarded as an op-

tional alternative to (2) (A) instead of an enlargement of it, Section 5 of Connecticut's P.A. 730 conflicts with § 606(a). The question then is whether the federal statute requires the state of Connecticut to provide AFDC benefits to the plaintiff students up to the age of twenty-one.

■ Because the language of the federal statute may be looked upon as not wholly free from doubt, it is appropriate to look beyond its language for further guidance in ascertaining the intent of Congress. *Cf.* Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

The Senate Report accompanying the 1964 bill which provided continued AFDC eligibility for students up to the age of twenty-one explained: "The extension of the program in this manner would be optional with the States." Senate Finance Comm. S.Rep. No. 1517, 1964 U.S.Code Cong. & Adm. News (2), p. 3925. *See also,* Senate Finance Comm. S.Rep. No. 404, 1965 U.S.Code Cong. & Ad.News (1), pp. 1962 and 2087. Looking next to the interpretation of this newly added language by those entrusted with administering the laws of which it is now a part, we note that the relevant Department of Health, Education, and Welfare (HEW) regulation interprets it as "the optional extension of the AFDC age limit to age twenty-one." HEW, Handbook of Public Assistance Administration, Part IV, § G 3220 (1965).

The plaintiffs argue that the word "optional" as used by those who enacted the statute and then by those who not only administer it but who presumably also had a part in drafting it, was meant only to have application in those states whose ages of majority are less than twenty-one. We do not accept that argument.

entirely excluded by the statute, are not represented. Moreover, plaintiffs do not represent even all ninteen year olds excluded by the statute. For example, those nineteen year olds who are not in

school or who attend schools or courses *in lieu of* secondary school are not included among plaintiffs. All plaintiffs here are graduates of secondary schools. *See infra* p. 493 n. 24.

■ Because we find part (2) (B) of § 606(a) not obligatory on the states, Connecticut was under no obligation to adopt it as an eligibility standard. Section 5 of P.A. 730 is, therefore, not inconsistent with the Social Security Act. Having failed to dispose of this case on statutory grounds we next turn to the merits of plaintiffs' constitutional ground.

### Equal Protection

■ Relying upon the constitutional prohibition that "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws," U.S.Const. Amend. XIV, § 1, the plaintiffs contend that Connecticut is barred from applying the classification it has made between nineteen year olds who are in full-time attendance in a secondary school and those who are not.

> "The Constitution in enjoining the equal protection of the laws upon States precludes irrational discrimination as between persons or groups of persons in the incidence of a law. But the Constitution does not require situations 'which are different in fact or opinion to be treated in law as though they were the same.' Tigner v. Texas, 310 U.S. 141, 147 [60 S.Ct. 879, 882, 84 L.Ed. 1124, 130 A.L.R. 1321]." Goesaert v. Cleary, 335 U.S. 464, 466, 69 S.Ct. 198, 199–200, 93 L. Ed. 163 (1948).

It has been noted that the traditional test of equal protection is whether the classification at issue is "without any reasonable basis." Shapiro v. Thompson, 394 U.S. 618, 638 n. 20, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Stated more fully, "The distinctions * * * must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." McDonald v. Board of Election Comn'rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969); see also, Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

■ Instead of this traditional test, which clothes the statutory classification with a presumption of constitutionality,[13] the plaintiffs urge us to employ a stricter standard of review requiring us to hold the classification unconstitutional "unless [it is] shown to be necessary to promote a *compelling* governmental interest." See Shapiro v. Thompson, *supra,* 394 U.S. at 634, 89 S. Ct. at 1331 (emphasis in original). Testing a classification by its necessity rather than by its rationality has been required in cases where the classification serves to penalize the exercise of a right expressly safeguarded by the Constitution, e. g., Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (free exercise of religion), or of one regarded as equally fundamental, e. g., Kramer v. Union Free School Dist., 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (right to vote); Shapiro v. Thompson, *supra* (right to travel); McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (right to be free of racial discrimination). Because we have read *King* to impart sufficient constitutional coloration to the plaintiffs' claims to *justify taking jurisdiction over them* under 28 U.S.C. § 1343(3), it does not automatically follow that the "rights" they assert are so fundamental as to require a departure from the use of the traditional test of equal protection in testing their constitutional validity.[14]

13. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

14. Insofar as Section 5 concerns aid for education, it does not affect a fundamental right. *See* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1129 (1969) ("Unlike voting and fair criminal procedure, education is not an interest which has long been recognized to be of pre-eminent importance.") *Cf.* Brown v. Board of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (racial classification).

■ The only right curtailed is to receive benefits conferred by the state, a right which finds its basis not in the Constitution, but in a statute enacted by the state's legislature. As noted above, although Congress was willing to extend matching funds for AFDC payments where a child has gone beyond the age of eighteen but is still attending school, a state is not compelled to include such a provision to qualify its plan for federal assistance. The observation that children attending school may still be dependent upon attaining age eighteen, see S.Rep. No. 1517, *supra* at n. 10 although a valid argument to support the adoption of a law extending such benefits to them, adds no extra quality to the plaintiffs' rights so as to require stricter scrutiny of the classification. The view has been expressed that although "[r]eceipt of welfare benefits may not at the present time constitute the exercise of a constitutional right * * * the equal protection standard to be applied should * * * more nearly approximate that applied to laws affecting fundamental constitutional rights," Rothstein v. Wyman, 303 F.Supp. 339, 346–347 (S.D.N.Y. 1969), appeal docketed, 38 U.S.L.W. 3211 (U.S. Nov. 28, 1969) (No. 896); *cf.* Napper v. Wyman, 305 F. Supp. 429 (S.D.N.Y. 1969). Underlying that view was the judicial awareness that the interest adversely affected was in "welfare aid upon which may depend the ability of the families to obtain the very means to subsist—food, shelter, and other necessities of life," Shapiro v. Thompson, *supra*, 394 U.S. at 627, 89 S. Ct. at 1327, and an awareness of what was pungently referred to in Kelly v. Wyman, 294 F.Supp. 893, 900 (S.D.N.Y. 1968), aff'd sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), as the "brutal need" of welfare clients when their benefits are wholly terminated.

The Supreme Court, however, has recently rejected application of a stricter equal protection test in a case involving limitation of, but not discontinuation of, welfare benefits. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L. Ed.2d 491 (1970). While recognizing that the administration of public welfare assistance "involves the most basic economic needs of impoverished human beings," and that that alone presented a "dramatically real factual difference" from cases involving only business economics, the Court nonetheless concluded that there was "no basis for applying a different constitutional standard."

■ We are of the opinion that the traditional test of equal protection which leaves to the state more leeway in drawing classification lines ought to be applied in this case. In adhering to that test, we are guided by the statement of the Supreme Court in Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968):

> "In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and interests of those who are disadvantaged by the classification."

### The Constitutional Claim

The constitutional question is whether the classification which distinguishes the plaintiffs from those who are eligible under Section 5 has "some relevance to the purpose for which the classification is made." Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954); Turner v. Fouche, *supra*.

■ The pivotal point of the classification is to provide an opportunity for young people to get some education.[15]

---

15. The purpose of the classification is ascertained from its terms, its context and the legal and practical objectives which can reasonably be imputed to the statute, *see* Goesaert v. Cleary, *supra*, at 466–467; Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1959), not from "[s]peculation as to legislative and executive motive. Rosado v. Wyman, *supra*, 397 U.S. at 419, 90 S.Ct. at 1221, 25 L.Ed.2d 442.

Viewed from this perspective, Section 5 is clearly intended to enable eligible nineteen year olds "to take advantage of educational opportunities to improve their preparation for self-support," and "become better prepared to enter the labor market." HEW, Handbook, *supra*, § G 3220 (interpreting 42 U.S.C. § 606(a) ). While this is consistent with the AFDC program, it leans more toward the goal of enabling young people to get an education than to providing subsistence for needy children. *See, e. g.,* 42 U.S.C. § 601; HEW, Handbook, *supra* §§ 3401 and 4223.4; Senate Finance Comm. S.Rep. No. 1517, *supra.*

Since educated persons are more likely to become self-supportive [16] and thus break the cycle of dependency, a state interest is served by allowing older children on welfare an opportunity to attain a certain standard of education. This is clearly a legitimate state end. The question is whether the classifications made by the state are rationally related to its attainment.

The Connecticut statute at issue embodies essentially three different bases for the challenged classification.

First a distinction is made between nineteen year olds who are in school and those who are not, i. e. to qualify for continued eligibility the nineteen year old must be in full-time attendance at a secondary school. This distinction is clearly rational, and plaintiffs apparently do not quarrel with it.

Secondly, the statute classifies those who are in school on the basis of age, and in two different ways. Nineteen year olds, who must satisfy additional eligibility requirements, are distinguished from eighteen year olds, all of whom are eligible for support;[17] those nineteen year old students who turn nineteen *after* the start of the school year are distinguished from nineteen year old students who turn nineteen *before* the start of the school year. While the state has extended eligibility for aid beyond Connecticut's otherwise applicable cut-off at the end of the eighteenth year [18] there is no requirement that the extension be limitless.[19] The difficulty is that in handling the relationship between the right to subsistence and the importance which attaches to job-related education, a value judgment is called for. Unless the courts are to assume the power of a sort of super-legislature that kind of judgment must be left to the relevant elected legislative bodies. Thus, we find insufficient warrant for holding that the state ought to be compelled to grant all nineteen year olds an unqualified option to remain on the welfare rolls by continuing to go to school despite their ability to earn the means to subsist. The state has evidently determined that by the time one reaches the age of nineteen he has had sufficient opportunity to acquire the basic education helpful for self-support.[20]

---

16. By encouraging self-support, of course, the state is also striving for longterm conservation of funds by weaning young adults from dependency on welfare payments.

17. *See* 1 Conn.Welfare Manual, Ch. II § 204(A) (2) (WSS No. 1372, 8/29/69).

18. In this connection, it is noted that Connecticut is not obligated by the Social Security Act, 42 U.S.C. § 606(a), to provide benefits to eighteen year olds. Therefore, the state is ineligible for and does not in fact receive any federal funds for support of those between the ages of eighteen and nineteen. *See* Brief for Plaintiffs at 10.

19. The law is replete with examples of distinctions drawn and limits set solely on the basis of age. The following are just a few examples from Connecticut law: Conn.Gen.Stats. § 22–13 (setting age 14 as the minimum age for employment in agriculture) ; § 14–36 (16-minimum age for driver's license) ; § 45–61 (18-minimum age for adopting a child) ; § 46–5g (21-minimum age for marriage without consent of parents).

20. We consider it irrelevant either that a child in Connecticut has a legal obligation to attend school only through the age of sixteen (Conn.Gen.Stats. §§ 10–184, 10–189 and 10–200) or that parents are

Since school years are not the same as calendar years, there is almost always an overlap between the two.[21] The effect of the amendment is to extend the definition of a child aged eighteen to include those attending secondary schools who turn nineteen after having begun a school term. It is obvious that the state's enlargement of a student's eighteenth year was intended to coordinate his chronological year with the school year. That permits him to remain at his studies to the end of the school year and avoids the sacrifice of an opportunity to get a high school diploma. If a young person has not yet reached his last year in high school after having had fourteen years in which to satisfactorily pass the requirements which are normally met in twelve,[22] it is not irrational to decide that he is not sufficiently likely to become better fitted to support himself to warrant his being kept in school at the expense of the state.

And from the other side, our economic system does not exclude nineteen year old workers who do not have a high school diploma, nor does our military system.[23] *See* 50 App. U.S.C.A. § 454 (a); 32 C.F.R. § 1631.5(d) as amended by Exec. Order No. 11,497, 34 F.R. 19019 (Nov. 29, 1969).

The third and final attack upon the state's classification is based on the type of school the AFDC recipient attends, i. e. only if the nineteen year old is a student in full-time attendance in a *secondary* school will he be eligible for continued benefits. Plaintiffs challenge this restriction insofar as it discriminates against those in college and those in other post-graduate educational or technical programs.[24] Again, we conclude that the classification is reasonable in light of the purpose of the statute.

While education plays a part in preparing young people for a place in the work of our society, it is not irrational for the state to refuse to maintain the next generation of workers in a state of dependence beyond the age of nineteen. Children do grow up and become self-supporting. Not all are college graduates. It is not irrational to conclude that a high school graduate has achieved the capability for employment that will be remunerated by enough for self-support and also offer good opportunities for future advancement. That level of educational attainment is widely recognized as acceptable for many areas of gainful employment. *See, e. g.,* HEW, Handbook *supra* § G–3220.

### Conclusion

We hold that the classifications created by Section 5 of Connecticut's Public Act 730 (1969), insofar as they have

obligated to support children through the age of twenty-one (Conn.Gen.Stats. § 17–320).

21. In Connecticut the public schools are open to all children over five years of age, but town boards of education may admit children under the age of five "or may exclude children who will not attain the age of 5 years until after the first day of January of any school year." Conn.Gen. Stats. § 10–15, as amended 1967.

22. At no age level are all equally well educated—or educable.

23. The disadvantages and hardships incident to going to work instead of attending school hardly seems more poignant or crushing than those incident to serving in the armed forces during a war. *Cf.* Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

24. We have no occasion here to consider the rationality of denying benefits to nineteen year old students in schools other than secondary school but of a comparable rather than more advanced educational level. All these plaintiffs are high school graduates and are attending or desirous of attending courses additional to, not alternative to, secondary school. We note that Section 5 amends prior law (n. 4, *supra*) by dropping "technical school" as well as "college" from the list of eligible schools, leaving only secondary school. *But see* Conn.Welfare Bull. No. 2325 (WSS No. 1372, 8/29/69) which somewhat ambiguously states: "Full-time school attendance for the nineteen year old child is limited to attendance in a *secondary school only*—either academic or vocational." (Emphasis in original). *See also,* 1 Conn.Welfare Manual, Ch. II § 204.

been put in issue by these plaintiffs, are rationally related to the state's proper purpose of encouraging dependent citizens to become self-supportive. Plaintiffs are, therefore, not denied equal protection by application of Section 5. Since, moreover, Section 5 does not contravene the Social Security Act, plaintiffs are not entitled to the relief they seek. The case is dismissed.

HAYS, Circuit Judge (concurring in the result):

While I concur in the result reached by the majority, I would dismiss the complaint on the ground that there does not exist a proper basis for federal jurisdiction.

Plaintiffs are nineteen year olds whose benefits under the Connecticut welfare statutes have been terminated because they have attained the age of nineteen and are no longer in full time attendance in a secondary school. As the majority points out, plaintiffs are not in a position of "brutal need",[1] nor does the termination of benefits deprive them of "the very means to subsist—food, shelter, and other necessities of life".[2] Only one of the plaintiffs has had his benefits terminating prior to graduation from secondary school. Having reached the age of nineteen and having had reasonable opportunity before then to secure a secondary education, it is certainly reasonable to conclude that this plaintiff now possesses the capability for self-support. The educational opportunities which the others claim to have been deprived of by the termination of their benefits relate to higher educational and technical training opportunities. These others have already completed their secondary school education. Educational opportunity of the type of which plaintiffs claim to be deprived is not a right essential to personal liberty. See Developments in the Law —Equal Protection, 82 Harv.L.Rev.

1065, 1129 (1969). The benefits plaintiffs seek are not mandated by rights secured by the Constitution, but are rather dependent upon a legislative decision as to how best to apply limited funds to maximize educational goals. This case is, therefore, not one of those where the right or immunity alleged to have been violated "is one of personal liberty, not dependent for its existence upon the infringement of property rights * * *". Hague v. CIO, 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939); Eisen v. Eastman, 421 F.2d 560, 564 (2d Cir. 1969); McCall v. Shapiro, 416 F.2d 246, 249–250 (2d Cir. 1969).

Nor is there any basis for jurisdiction under Section 1343(3) on the ground that Section 5 of Public Act 730, the 1969 amendment to Connecticut's welfare statutes pursuant to which plaintiff's benefits were terminated, conflicts with section 406(a) of the Social Security Act, 42 U.S.C. § 606(a) (Supp. IV 1965–68). See Eisen v. Eastman, *supra,* 421 F.2d at 565; McCall v. Shapiro, *supra,* 416 F.2d at 250. See also King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Section 606(a) is not an "Act of Congress providing for equal rights of citizens" within the intendment of Section 1343(3). See Rosado v. Wyman, 414 F.2d 170, 178 (2d Cir.), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); New York v. Galamison, 342 F.2d 255, 268 (2d Cir.), cert. denied, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965). Note Federal Judicial Review of State Welfare Practices, 67 Colum.L. Rev. 84, 112 (1967). Nor is 42 U.S.C. § 606(a) an "Act of Congress providing for the protection of civil rights" within the intendment of § 1343(4). McCall v. Shapiro, *supra,* 416 F.2d at 249.

In assuming jurisdiction under Section 1343(3), the majority places great reliance on King v. Smith, *supra,* and Judge Friendly's characterization of the

---

1. See Kelly v. Wyman, 294 F.Supp. 893, 900 (S.D.N.Y.1968) (three judge court), aff'd, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

2. See Shapiro v. Thompson, 394 U.S. 618, 627, 89 S.Ct. 1322, 1327, 22 L.Ed.2d 600 (1969).

jurisdictional basis of that decision in *Eisen, supra,* 421 F.2d 564. But there is no logical nexus between the type of "dependency" with which the Connecticut statute is concerned and the essential and critical dependency of younger children, such as those involved in *King.* The "dependency" of a nineteen year old secondary school student is quite different and is related only to particular educational needs.

No individual plaintiff's claim (see Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)) satisfies the $10,000 jurisdictional amount of 28 U.S.C. § 1331. The length of time any particular plaintiff would continue to receive benefits is too speculative to serve as a basis for satisfying the jurisdictional amount. See Rosado v. Wyman, *supra,* 414 F.2d at 176.

Accordingly, I would dismiss the complaint for lack of jurisdiction.