Gilbert H. King, J.
The plaintiff is a student at the State University of New York at Buffalo. She has applied for and been denied certain “ scholar incentive ” benefits because she is an alien and has declared that she “ intends to remain a permanent resident of the State of New York, but chooses not to become a naturalized United States citizen in that to do so would revoke her British citizenship.”
Article 13 of the Education Law of the State of New York provides for the establishment, eligibility requirements, allocation, use and administration of the New York State (1) scholar incentive, (2) scholarship, (3) fellowship, and (4) other award programs for higher education (§ 601).
*417 Section 602 of the Education Law is entitled ‘ ‘ Eligibility requirements and conditions governing awards ”. Subdivision 2 of section 602 provides: “ Citizenship. An applicant (a) must be a citizen of the United States, or (b) must have made application to become a citizen, or (c) if not qualified for citizenship, must submit a statement affirming intent to apply for United States citizenship as soon as he has the qualifications, and must apply as soon as eligible.”
Plaintiff was granted and received a regents scholarship for the 1969-70 academic year when, as a high school senior, she qualified academically for the scholarship and signed an affirmation declaring her intention to apply for United States citizenship as soon as eligible. In the 1970-71 academic year, following the same procedure, she again received scholarship payment. In June, 1971 plaintiff made application for scholar incentive benefits for the 1971-72 academic year. In September, she was notified that proof of application for citizenship would be required before any further payments could be made. She did not comply with the request but instead elected to bring this class action on her behalf and on behalf of all others similarly situated, alleging that subdivision 2 of section 602 is unconstitutional in that it denies aliens the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.
That the Fourteenth Amendment is not confined to the protection of citizens and includes an alien in the definition of ‘ ‘ any person ’ ’ is well settled. The Equal Protection and Due Process clauses are ‘ ‘ universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality” (Yick Wo v. Hopkins, 118 U. S. 356, 369).
The Fourteenth Amendment does however permit “ the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (McGowan v. Maryland, 366 U. S. 420, 424-25). Following this principle, the United States Supreme Court upheld a State regulation involving the distribution of welfare funds which admittedly discriminated against *418 families of different sizes by reason of some disparity in grants holding that the standard (for permissible State action) “is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy. ’ ’ (Dandridge v. Williams, 397 U. S. 471, 486).
Discrimination on the basis of alienage, like discrimination on the basis of race, color, or nationality, places on the State “ a very heavy burden to justify it ” and “ is therefore subject to strict judicial scrutiny ” (Leger v. Sailer, 321 F. Supp. 250, 252; Takahashi v. Fish Comm., 334 U. S. 410, 420).
Plaintiff contends that the State has not shown a “ compelling governmental interest ” which would justify the exclusion of her class of aliens from higher education financial assistance. The State has not offered any proof by way of statistics or facts, financial or otherwise, which would support a claim that the State did in fact have such a compelling State interest as would justify the limitations set forth in subdivision 2 of section 602. Indeed, “compelling governmental interest ” based on finances alone appears to be virtually impossible to establish even in these days when budgetary problems are of such great and almost completely overriding concern in virtually all of the actions of State and local governments. (Cf. Shapiro v. Thompson, 394 U. S. 618; Goldberg v. Kelly, 397 U. S. 254,) Subdivision 2 of section 602 cannot therefore be held to be constitutional on the premise that it fulfills a 11 compelling State interest.”
Plaintiff also contends that the denial of benefits to aliens who will not declare an intention to become United States citizens “ creates a classification which constitutes an invidious discrimination denying them the equal protection of the laws ” (Shapiro v. Thompson, 394 U. S. 618, 627, supra).
If the statute denied the benefits to all aliens, it would be unconstitutional under the principle enunciated in Leger, Takahashi and Yick Wo (supra). But the statute does not deny the benefits to aliens because of their alienage. Indeed, as the facts show, the plaintiff, an alien, has already been the beneficiary of two years of assistance. The Education Law allows an alien to obtain the same higher education in the same institutions as citizens. In imposing qualifying conditions on those who seek the benefits of incentive and scholarship payments, it creates no “ invidious discrimination ”. The section demands no more of aliens and offers them no less than it does to citizens. Classifications for aid to higher education are not *419 unconstitutional. Educational opportunity of the type involved here is not a right essential to a person’s liberty, or freedom of movement, or the right to essentials of life such as food, clothing, equal employment opportunity and the like, the denials of which have been held to be unconstitutional. The benefits plaintiff seeks are not mandated ‘ ‘ by rights secured by the Constitution, but are rather dependent upon a legislative decision as to how best to apply limited funds to maximize educational goals ” (McClellan v. Shapiro, 315 F. Supp. 484, 494).
Higher education is not a fundamental right. Therefore, the statute must be tested not on the basis of a “ compelling State interest ’ ’ but on its relevancy and rationality to the achievement of a permissible State objective (McGowan v. Maryland and Dandridge v. Williams, supra). The statute does not offend the Constitution when it requires those who seek the benefits offered by the largesse of the people of the State of New York to evidence, by citizenship either extant or to be acquired, an intention to use the proffered additional educational opportunities not only for their own benefit but also, albeit indirectly, for the ultimate benefit of the State and the Nation.
Subdivision 2 of section 602 of the Education Law is constitutional. The plaintiff’s petition is in all respects denied and the proceeding dismissed, without costs to either party.